USCA4 Appeal: 23-2232    Doc: 23    Filed: 03/15/2024    Pg: 1 of 29

## NO. 23-2232

# UNITED STATES COURT OF APPEALS

## FOR THE

## FOURTH CIRCUIT

DON GORDON, et al.,

*Plaintiffs – Appellees*

v.

SERGEANT WILLIAM C. HEATH,

*Defendant – Appellant*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(GEORGE L. RUSSELL, JUDGE)

## BRIEF OF APPELLANT

Bruce L. Marcus
Sydney M. Patterson
MARCUSBONSIB, LLC
6411 Ivy Lane, Suite 116
Greenbelt, Maryland 20770
(301) 441-3000
bmarcus@marcusbonsib.com
spatterson@marcusbonsib.com

*Counsel for Appellant*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No.  23-2232          Caption:  Don Gordon v. William Heath

Pursuant to FRAP 26.1 and Local Rule 26.1,

William C. Heath
(name of party/amicus)


who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO


2.    Does party/amicus have any parent corporations?                   ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:


3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                    ☐YES ☑NO
      If yes, identify all such owners:


12/01/2019 SCC                              - 1 -

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Sydney M. Patterson          Date: 11/29/23

Counsel for: Appellant William C. Heath

- 2 -

Print to PDF for Filing

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... ii

JURISDICTIONAL STATEMENT ........................................................................1

STATEMENT OF ISSUES ....................................................................................2

STATEMENT OF CASE ........................................................................................2

    I.   Facts Alleged in the Amended Complaint.......................................................2

    II.  Procedural Background .................................................................................4

SUMMARY OF ARGUMENT ...............................................................................5

ARGUMENT ..........................................................................................................6

    I.   Standard of Review.........................................................................................6

    II.  Qualified Immunity Bars the Claim for Hostile Work Environment..............7

        A.  Gordon and Jones have not Established a Hostile Work Environment Claim against Sergeant Heath ...........................................................9

        B.  There is no Clearly Established Law Establishing that the Alleged Conduct would Violate Gordon and Jones's Rights ........................17

CONCLUSION.....................................................................................................20

# TABLE OF AUTHORITIES

**Cases**                                                                                                                                        **Page**

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ...............................................................18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................. 13, 16

*Beardsley v. Webb*, 30 F.3d 524 (4th Cir. 1994) .......................................................9

*Boyer-Liberto v. Fontainebleau Corp.*,
    786 F.3d 264 (4th Cir. 2015) ..................................................... 9, 10, 12, 14

*Brawn v. Maynard*, 652 F.3d 557 (4th Cir. 2011) ...................................................8

*Causey v. Balog*, 162 F.3d 795 (4th Cir. 1998) .....................................................14

*EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306 (4th Cir. 2008).................... 12, 15, 16

*Farmer v. Ramsay*, 43 Fed. App'x 547 (4th Cir. 2002) ...........................................12

*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)..................................... 15, 16

*General Building Contractors Ass'n, Inc. v. Pennsylvania*,
    458 U.S. 375 (1982)........................................................................ 12, 16

*Gilliam v. S.C. Dep't of Juvenile Justice*, 474 F.3d 134 (4th Cir. 2007) .................14

*Grutter v. Bollinger*, 539 U.S. 306 (2003)...........................................................12

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982)..........................................................7, 9

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993) .....................................................9

*Hawkins v. PepsiCo, Inc.*, 203 F.3d 274 (4th Cir. 2000)..........................................14

*Hope v. Pelzer*, 536 U.S. 730 (2002) ...................................................................17

*Korb v. Lehman*, 919 F.2d 243 (4th Cir. 1990) ......................................................18

ii

*Love-Lane v. Martin*, 355 F.3d 766 (4th Cir. 2004) ...................................................13

*Malley v. Briggs*, 475 U.S. 335 (1986) .................................................................. 19

*Merchant v. Bauer*, 677 F.3d 656 (4th Cir. 2012) ...................................................18

*Mullenix v. Luna*, 57. U.S. 7 (2015).......................................................................19

*McVey v. Stacy*, 157 F.3d 271 (4th Cir. 1998)........................................................7

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) .................................................. 1, 6, 7, 19

*National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ............................15

*Pearson v. Callahan*, 555 U.S. 223 (2009)......................................................... 7, 8, 9

*Renn v. Garrison*, 100 F.3d 344 (4th Cir. 1996) ......................................................6

*Smith v. First Union National Bank*, 202 F.3d 234 (4th Cir. 2002) ........................12

*Strothers v. City of Laurel*, 895 F.3d 317 (4th Cir. 2018) ............................... 10, 15

*Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977).....................................................13

*White v. Pauly*, 580 U.S. 73 (2017) ........................................................................18

*Wilcox v. Brown*, 877 F.3d 161 (4th Cir. 2017).................................................. 12, 13

*Williams v. Hansen*, 326 F.3d 569 (4th Cir. 2003) ....................................................8

*Williams v. Ozmint*, 716 F.3d 801 (4th Cir. 2013).....................................................8

*Wilson v. Prince George's Cnty.*, 893 F.3d 213 (4th Cir. 2018)............................7, 8

*Ziskie v. Mineta*, 547 F.3d 220 (4th Cir. 2008).......................................................12

iii

**Statutes**

28 US.C. § 1291 ........................................................................................1

28 U.S.C. § 1331 .......................................................................................1

28 U.S.C. § 1343 .......................................................................................1

42 U.S.C. § 1981 ................................................................................ *passim*

42 U.S.C. § 1983 ................................................................................ *passim*

42 U.S.C. § 2000, *et seq*..........................................................................4

## JURISDICTIONAL STATEMENT

In this civil action involving claims brought under Title VII and 42 U.S.C. §§ 1981 and 1983, the district court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has appellate jurisdiction under 28 U.S.C. § 1291 and the collateral order doctrine to review the district court's memorandum and order rejecting Sergeant Heath's defense of qualified immunity. *See Mitchell v. Forsyth,* 472 U.S. 511, 530 (1985) (noting that the denial of qualified immunity is an appealable final decision within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment).

By Memorandum and Order dated September 21, 2023, the United States District Court granted in part and denied in part Sergeant Heath's motion to dismiss. The District Court denied Sergeant Heath's defense of qualified immunity with respect to Plaintiffs' 42 U.S.C. § 1981 claim for hostile work environment and granted Sergeant Heath's motion to dismiss as to all other claims. Within 30 days of the district court's memorandum and order, on October 19, 2023, Sergeant Heath noted a timely appeal to this Court from the denial of the defense of qualified immunity.

1

**STATEMENT OF ISSUES**

Is the hostile work environment claim against Sergeant Heath barred by qualified immunity when there is no allegation of any racially discriminatory conduct or harassment by Sergeant Heath?

**STATEMENT OF CASE**

## I.    Facts Alleged in the Amended Complaint

Gordon and Jones are two African American men who were members of a Maryland State Police task force known as the Organized Crime Drug Enforcement Task Force-Baltimore Strike Force Group 7 (the "Task Force"). JA6. The Task Force was comprised of law enforcement officers from various local, state, and federal law enforcement agencies. JA9. Gordon was assigned to the Task Force in October 2019 by his employer, the Maryland Department of Public Safety and Correctional Services.  Jones was assigned to the Task Force in April 2019 by his employer, the Baltimore City Sheriff's Office. JA9. Sergeant Heath and Corporal Oros were employed by the Maryland State Police and were supervisors of the Task Force. JA7. Sergeant Heath and Corporal Oros provided day-to-day supervision to Gordon and Jones. JA9.

Within the first few months of their assignment to the Task Force, Gordon and Jones began to experience disparate treatment due to their race. JA10. Gordon and Jones noticed white Task Force members who had the same job title or similar job

2

duties as Gordon and Jones received more favorable treatment. JA11. Gordon and Jones were not invited or included in informal meetings held by Heath and Oros or included in group texts regarding Task Force operations that included white Task Force members. JA11. The informal meetings and group texts were used to discuss information about job assignment opportunities and opportunities for overtime work. JA11. Consequently, Gordon and Jones were denied desirable job assignment opportunities and overtime work opportunities that white Task Force members received. JA11.

On or about June 2, 2020, Corporal Oros sent a racially offensive text message to Gordon, Jones, and other members of the Task Force. JA12-13. Oros' text message depicted a superimposed nude African-American male with exposed and enlarged genitals sitting on George Floyd's head and neck area on the street near the rear bumper of a Minneapolis police car. JA13. Gordon and Jones allege that Sergeant Heath failed to "properly supervise and discipline" Oros for his racist and offensive conduct, failed to "start an investigation" into Oros' conduct, and failed to report it through "proper Maryland State supervisory channels." JA13. Gordon and Jones were upset and offended by the actions of Oros and the inaction of Sergeant Heath. JA13. Gordon and Jones allege that the conduct of the Maryland State Police, Oros, and Heath created an environment that resulted in Gordon and Jones's disparate treatment based on race and thereby created a hostile work environment.

3

JA13. Gordon and Jones also allege that this conduct created a tense atmosphere where Gordon and Jones did not want to come to work, created mistrust along racial lines within the Task Force, and caused Gordon and Jones to feel isolated from other Task Force members. JA13.  Gordon and Jones believed they could not trust white Task Force members due to the tension and mistrust caused by the behavior and conduct of the Maryland State Police, Heath, and Oros. JA13, JA15.

## II.    Procedural Background

Based on these allegations, Gordon and Jones initiated this action against the Maryland State Police and Sergeant Heath and Corporal Oros in their official and individual capacities on July 8, 2022. Their amended complaint filed February 7, 2023, alleges (1) race discrimination under Title VII, 42 U.S.C. § 2000, *et seq*.; (2) race discrimination under 42 U.S.C. § 1983; (3) hostile work environment under Title VII; (4) race discrimination under 42 U.S.C. § 1981; and (5) hostile work environment under 42 U.S.C § 1981. JA5. In response to the amended complaint, Sergeant Heath filed a Motion to Dismiss, or, in the alternative, Motion for Summary Judgment, arguing among other things that the claims brought against him in his individual capacity were barred by qualified immunity.[1]

---

[1] The Maryland State Police also moved to dismiss, or, in the alternative, for summary judgment. Defendant Corporal Oros filed a motion to dismiss but did not assert the defense of qualified immunity.

On September 21, 2023, the district court granted in part and denied in part the motions to dismiss filed by Sergeant Heath and Corporal Oros. The district court denied the motions to dismiss the hostile work environment claim under § 1981 against Sergeant Heath and Corporal Oros in their respective individual capacities and granted the motions to dismiss as to all other claims against Sergeant Heath and Corporal Oros. The district court dismissed all claims against MSP with the exception of the hostile work environment claim under Title VII. The district court ultimately concluded that Gordon and Jones had failed to state a claim for race discrimination but had sufficiently alleged their hostile work environment claim based on the offensive text message Oros sent to the Task Force group chat. JA40.

In partially denying Sergeant Heath's motion to dismiss, the district court rejected Sergeant Heath's asserted defense of qualified immunity from suit. This timely appeal followed.

## SUMMARY OF ARGUMENT

The district court erred by not granting Sergeant Heath's motion to dismiss the § 1981 hostile work environment claim on the basis of qualified immunity.

Gordon and Jones have failed to allege any facts to show racially discriminatory actions or harassment by Sergeant Heath. The amended complaint relies exclusively on conclusory and self-serving assertions of discrimination which the district court correctly found to be insufficient to state a claim for racial

discrimination. The sole remaining claim for hostile work environment is based exclusively on a single offensive text message sent by Corporal Oros to members of the Task Force. There is no allegation that Sergeant Heath sent or participated in sending the offensive text. Nor is the conduct of Corporal Oros imputable to Sergeant Heath under a theory of vicarious liability. Under these circumstances, the allegations in the amended complaint are woefully insufficient to establish constitutional violations by Sergeant Heath. Absent any showing of racially discriminatory actions by Sergeant Heath, his alleged conduct is not actionable and does not support a claim for hostile work environment under clearly established law. As a result, the allegations in the amended complaint are insufficient to overcome Sergeant Heath's claim of qualified immunity.

**ARGUMENT**

## I.  Standard of Review

This case concerns an interlocutory appeal of the denial of a motion to dismiss based on the defense of qualified immunity. The denial of a claim of qualified immunity is a question of law that is reviewed *de novo*. *Mitchell v. Forsyth,* 472 U.S. 511, 528 (1985); *see Renn v. Garrison*, 100 F.3d 344, 349 (4th Cir. 1996) ("We review *de novo* the district court's denial of a defense of qualified immunity").

6

## II.    Qualified Immunity Bars the Claim for Hostile Work Environment

The district court erred in denying Sergeant Heath's defense of qualified immunity in relation to Gordon and Jones's hostile work environment claim. Public officials such as police officers are immune from suit under 42 U.S.C. § 1981 if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).

The Supreme Court has made clear that qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Because the entitlement at issue is "an *immunity from suit* rather than a mere defense to liability," claims of qualified immunity should be resolved at the earliest possible stage of the proceedings. *Mitchell,* 472 U.S. at 526 (emphasis in original);[2] *McVey v. Stacy*, 157 F.3d 271, 275 (4th Cir. 1998) ("[W]hen a district court declines to give a qualified immunity defense at the dismissal stage of litigation a hard look, it risks unwittingly the forfeiture of some protections afforded by that defense.").

Determining whether qualified immunity is appropriate is a two-step process. *Pearson v. Callahan,* 555 U.S. 223, 232 (2009); *Wilson v. Prince George's Cnty.,*

---

[2] All internal citations and quotation marks are omitted throughout unless otherwise stated.

*Maryland*, 893 F.3d 213, 219 (4th Cir. 2018). First, a court must decide whether the facts alleged or shown, taken in the light most favorable to the plaintiff, establish that the officer's conduct violated the plaintiff's constitutional right. *Wilson*, 893 F.3d at 219. Second, the court must consider whether the right at issue was "clearly established" at the time of the officer's conduct. *Id.* Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

It is the officer's conduct that is the central focus of the qualified immunity analysis. *See Williams v. Ozmint,* 716 F.3d 801, 805 (4th Cir. 2013) (Qualified immunity protects officials "who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful."); *Brawn v. Maynard*, 652 F.3d 557, 560 (4th Cir. 2011) (observing that qualified immunity protects officials from liability for "bad guesses in gray areas"); *Williams v. Hansen,* 326 F.3d 569, 579 (4th Cir. 2003) (noting qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."). In other words, "even when the facts in the record establish that *the officer's conduct* violated a plaintiff's constitutional rights, the officer still is entitled to immunity from suit 'if a reasonable person in the [officer's] position could have failed to appreciate *that his conduct* would violate those rights.'" *Wilson*, 893 F.3d at 219 (emphasis added).

8

Thus, under *Harlow v. Fitzgerald*, Sergeant Heath is entitled to qualified immunity unless *his actions* violated clearly established law. 457 U.S. at 818-19. Both prongs of the *Pearson* qualified immunity test support the conclusion that qualified immunity bars Gordon and Jones's hostile work environment claim: Gordon and Jones have failed to establish that Sergeant Heath's conduct violated their constitutional right to not be subjected to a racially discriminatory hostile work environment; and, there is no clearly established law demonstrating that Sergeant Heath's conduct was unconstitutional at the time of this incident.

### A. Gordon and Jones have not Established a Hostile Work Environment Claim against Sergeant Heath

Gordon and Jones's hostile work environment claims under 42 U.S.C. § 1981 are governed by the same analytical framework employed in Title VII hostile work environment claims. *See Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015); *see also Beardsley v. Webb,* 30 F.3d 524, 529 (4th Cir. 1994) (noting the equal protection claims pursuant to § 1983 are also governed by the Title VII analysis).

A hostile environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). To state a claim for hostile work environment, "a plaintiff must show that there is (1)

9

unwelcome conduct; (2) that is based on the plaintiff's ... race; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Boyer-Liberto*, 786 F.3d at 277.

Under the first element of a claim for hostile work environment, Gordon and Jones must demonstrate "unwelcome conduct" by Sergeant Heath. *Id.* The Fourth Circuit has explained that "an employee can demonstrate that certain conduct is unwelcome simply by voicing [his] objection to the alleged harasser or to the employer." *Strothers v. City of Laurel*, 895 F.3d 317, 328–29 (4th Cir. 2018). Gordon and Jones generally allege that they were excluded from text messages and informal meetings which included or were held by Sergeant Heath. The amended complaint does not particularize facts to demonstrate how Gordon and Jones were excluded. There is no indication of whether they allege, for example, that they were actively and intentionally excluded, prohibited, or prevented from participating, or whether they simply were not extended an affirmative invitation.

There are no specific factual allegations demonstrating that Sergeant Heath was personally responsible for the alleged exclusion of Gordon and Jones or that he created or exercised control over the group texts. *See* JA12 ("Plaintiffs discovered that Defendant Oros and Defendant Heath participated in such text message threads which excluded them."). Gordon and Jones fail to allege any facts regarding when

10

and how the group texts were created, what purpose they served, and who was or was not included in the group. Gordon and Jones do not allege that they voiced any objection about their exclusion from informal meetings and group texts to Sergeant Heath or another individual on the Task Force. In the absence of nearly all relevant facts and context, Gordon and Jones have failed to demonstrate these circumstances constitute objectively unwelcome conduct, much less that it was the conduct of Sergeant Heath.

Next, Gordon and Jones allege that Sergeant Heath failed to properly supervise and discipline Oros, failed to report Oros through supervisory channels, and failed to start an investigation into Oros' conduct of sending a single offensive text message. They do not allege what, if any, actions *were taken* by Sergeant Heath or others in response to Oros' conduct, and they do not allege that they voiced any objection to Sergeant Heath's alleged inactions. More fundamentally, Gordon and Jones do not expressly allege that Sergeant Heath had any supervisory authority over Oros. There is no allegation that Sergeant Heath had authority to supervise, discipline, or initiate investigations into Oros' conduct. Gordon and Jones failed to allege any facts to demonstrate these omissions constituted objectively unwelcome conduct.

Even assuming that Gordon and Jones had alleged unwelcome conduct by Sergeant Heath, they failed to establish that the unwelcome conduct was because of

11

their race. *See Boyer-Liberto*, 786 F.3d at 277 (stating that a viable hostile work environment claim requires the plaintiff to show unwelcome conduct "that is based on the plaintiff's . . .race"). An employee is harassed or otherwise discriminated against because of his race if, "but for" the employee's race, he would not have faced such conduct. *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 242 (4th Cir. 2002). Thus, plaintiffs must demonstrate "that the harassing conduct was motivated by [racial] animosity." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 314 (4th Cir. 2008); *Ziskie v. Mineta*, 547 F.3d 220, 226 (4th Cir. 2008) ("[H]arassment due to personality conflicts will not suffice."). Moreover, a defendant's personal liability under § 1981 requires proof of intentional discrimination by *that defendant*. *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania,* 458 U.S. 375, 391 (1982) ("§ 1981, like the Equal Protection Clause, can be violated only by purposeful discrimination"); *see also Grutter v. Bollinger,* 539 U.S. 306, 343 (2003) (noting that § 1983 claims based on the equal protection clause are, for all practical purposes, identical to claims based on § 1981); *Farmer v. Ramsay*, 43 Fed. App'x 547, 553 n.8 (4th Cir. 2002) (noting that a plaintiff suing a state actor "has no cause of action based on § 1981 independent of § 1983").

Thus, liability for a violation of the rights secured by § 1981 requires a showing of personal fault based upon a defendant's own conduct. *See Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) ("[L]iability will only lie where it is

affirmatively shown that the official charged acted personally in the deprivation of the plaintiffs' rights."); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights); *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983).

Here, the only conduct that is remotely alleged to have been racially motivated is the offensive text sent by Oros to members of the Task Force. The district court therefore determined that Gordon and Jones stated a claim for hostile work environment based solely on the single offensive text message sent by Oros. Significantly, Gordon and Jones do not allege that Sergeant Heath sent or participated in sending the offensive text. The only alleged acts or omissions Gordon and Jones attribute to Sergeant Heath are again the vague allegations that Sergeant Heath "failed to properly supervise and discipline Defendant Oros for his racist and offensive conduct" and "failed to report Defendant Oros' conduct through proper Maryland State Police supervisory channels." JA13. These allegations of unwelcome conduct are unsupported by any facts suggesting that Sergeant Heath's

13

conduct was based on race, and that but for Gordon and Jones's race, Sergeant Heath would not have failed to report, discipline, or investigate Oros.

Even viewed in the light most favorable to Gordon and Jones, the conclusory allegations in the amended complaint fail to present a particularized basis for alleging that Sergeant Heath's conduct was because of race. Under Fourth Circuit precedent, conclusory assertions are insufficient to establish discrimination. *See, e.g., Gilliam v. S.C. Dep't of Juvenile Justice,* 474 F.3d 134, 142 (4th Cir. 2007) (conclusory statements that plaintiff was treated differently because of race and "generalized statements of dissimilar treatment" insufficient to show discrimination based on race); *Hawkins v. PepsiCo, Inc.,* 203 F.3d 274, 281 (4th Cir. 2000) (bare allegation that supervisor "did not subject any of [plaintiff's] white peers to similarly poor treatment" did not show the treatment "was due to race rather than [the supervisor's] admittedly low regard for [plaintiff's] individual performance"); *Causey v. Balog,* 162 F.3d 795, 801 (4th Cir. 1998) (allegations of ill treatment at the hands of supervisors insufficient to make out hostile work environment claim where supervisor "never made any derogatory comments about [plaintiff's] race or age, and nothing about his conduct suggests it was based on these factors").

The third element of a hostile work environment claim requires that the offending conduct be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Strothers*, 895

F.3d at 331. Whether the environment is objectively hostile or abusive is "judged from the perspective of a reasonable person in the plaintiff's position." *Boyer-Liberto*, 786 F.3d at 277. That determination is made "by looking at all the circumstances," which "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* Unlike a typical claim of intentional discrimination based on a discrete act, a hostile-work-environment claim's "very nature involves repeated conduct." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). However, the ultimate inquiry is whether the conduct is so "extreme" that it "amount[s] to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998).

Gordon and Jones do not allege any physically threatening behaviors, humiliating conduct, or interference with work performance.  As set forth above, they have alleged only one claim of ostensibly racially motivated action in the offensive text disseminated by Oros. However, even conduct that would objectively cause hurt feelings or offense is not enough to be severe or pervasive. *Sunbelt Rentals, Inc.,* 521 F.3d at 315. The single text sent by Oros is not pervasive conduct. "[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 524 U.S. at 788.

15

The offensive text message sent by Oros on a single occasion to members of the Task Force does not rise to the level of a hostile work environment claim.

The last element of a hostile work environment claim is whether the conduct is imputable to the employer. Here, Sergeant Heath is not alleged to be the employer of Gordon and Jones. The hostile work environment claim against Sergeant Heath must therefore be based upon his own personal actions. To the extent Gordon and Jones suggest that Sergeant Heath had authority to supervise or discipline Oros, that allegation, without more, does not make Oros' conduct imputable to Sergeant Heath. In in order to sue an official under § 1981 for conduct arising from his supervisory responsibilities, a plaintiff must plausibly plead not only that the official's subordinates violated constitutional rights, but that the official by virtue of his own conduct and state of mind did so as well. *See Gen. Bldg. Contractors Ass'n*, 458 U.S. at 391; *see also Iqbal*, 556 U.S. at 677, 683 (concluding that alleged deliberate indifference to or knowledge and acquiescence in subordinates' unconstitutional conduct or discriminatory animus, alone, did not amount to the state of mind required to establish Ashcroft and Mueller violated the Constitution).

Gordon and Jones have not established any unwelcome racially discriminatory conduct by Sergeant Heath through his own individual actions which would support a claim for hostile work environment. Even if the allegations in the amended complaint are sufficient to state a claim for hostile work environment based

16

on the offensive text sent by Oros, they are nevertheless insufficient to overcome

Sergeant Heath's claim of qualified immunity:

> In conducting qualified immunity analysis ..., courts do not merely ask whether, taking the plaintiff's allegations as true, the plaintiff's clearly established rights were violated. Rather, courts must consider as well whether each defendant's alleged conduct violated the plaintiff's clearly established rights. For instance**, an allegation that Defendant A violated a plaintiff's clearly established rights does nothing to overcome Defendant B's assertion of qualified immunity, absent some allegation that Defendant B was responsible for Defendant A's conduct.**

> *Hope v. Pelzer,* 536 U.S. 730, 751 n.9 (2002) (Thomas, J., dissenting)

(emphasis added).

Accordingly, Gordon and Jones have not established a hostile work

environment claim against Sergeant Heath.

### B.   There is no Clearly Established Law Establishing that the Alleged Conduct would Violate Gordon and Jones's Rights

The second prong of the qualified immunity analysis requiring that the

constitutional right at issue must be clearly established has not been met in this case.

The Supreme Court has recently emphasized that "clearly established law"

should not be defined "at a high level of generality," but instead the clearly

established law must be "particularized" to the facts of the case and the law

determined "beyond debate." *White v. Pauly,* 580 U.S. 73, 79 (2017) (per curiam).

Otherwise, "[p]laintiffs would be able to convert the rule of qualified immunity ...

into a rule of virtually unqualified liability simply by alleging violation of extremely

17

abstract rights." *Id*.; *see Merchant v. Bauer,* 677 F.3d 656, 665 (4th Cir. 2012) (noting that to defeat qualified immunity, "the existing authority must be such that the unlawfulness of the conduct is manifest."). Although a case "directly on point" is not required for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011). If there exists a "legitimate question" as to whether particular conduct violates a particular right then the right is not clearly established and qualified immunity applies. *Korb v. Lehman,* 919 F.2d 243, 247 (4th Cir. 1990).

An individual has a generalized right not to be subjected to unwelcome conduct based on race that creates a hostile and abusive work environment. However, this generalized right does little to assist the analysis of qualified immunity under the facts of this case. The hostile work environment claim brought by Gordon and Jones does not allege any unwelcome discriminatory conduct or harassment by Sergeant Heath. The amended complaint vaguely attributes certain actions and inactions to Sergeant Heath but does not specifically allege which of these actions or omissions were based on race. Overall, the amended complaint fails to allege more than conclusory assertions of racial discrimination by any defendant.

The only allegation in the amended complaint that could be described as "harassment" is the racially offensive text sent by Oros, and there is no allegation that Sergeant Heath sent or participated in sending the offensive text. The allegation

that Sergeant Heath did not properly supervise or discipline Oros is not supported by sufficient facts to show that Sergeant Heath's alleged conduct was undertaken for a racially discriminatory purpose and with the intent to create a hostile and abusive work environment. Absent this showing of a racially discriminatory purpose and intent, the alleged conduct by Sergeant Heath is not actionable and does not support a claim for hostile work environment under clearly established law.

Where, as here, an official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," qualified immunity attaches. *Mullenix v. Luna,* 57. U.S. 7, 11 (2015); *see Malley v. Briggs,* 475 U.S. 335, 341 (1986) (explaining that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell,* 472 U.S. at 526.

19

## CONCLUSION

For the foregoing reasons, Sergeant Heath is entitled to qualified immunity. This Court should reverse the district court's decision denying Sergeant Heath's motion to dismiss as to the claim for hostile work environment under 42 U.S.C. § 1981.

Respectfully submitted,

MARCUSBONSIB, LLC

*/s/ Sydney M. Patterson*
Bruce L. Marcus (Bar No. 06341)
Sydney M. Patterson (Bar No. 19036)
6411 Ivy Lane, Suite 116
Greenbelt, Maryland 20770
Telephone: (301) 441-3000
Facsimile: (301) 441-3003
bmarcus@marcusbonsib.com
spatterson@marcusbonsib.com

*Counsel for Appellant*
*Sergeant William Heath*

20

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

No. __23-2232__        **Caption:**   Don Gordon et al. v. Sergeant William C. Heath

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

---

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines.  Appellee's Opening/Response Brief  may not exceed 15,300 words or 1,500 lines.  A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type.  See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

---

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words.  Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

---

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger.  A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

---

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✓]     this brief or other document contains _____4,458_____ [*state number of*] words

[ ]     this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✓]     this brief or other document has been prepared in a proportionally spaced typeface using
Microsoft Word _____     [*identify word processing program*] in
Times New Roman 14pt font _____     [*identify font size and type style*]; **or**

[ ]     this brief or other document has been prepared in a monospaced typeface using
_____     [*identify word processing program*] in
_____     [*identify font size and type style*].

(s)  Sydney M. Patterson _____

Party Name  Sergeant William C. Heath _____

Dated: 3/15/24 _____

04/12/2020  SCC

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of March, 2024, a copy of Appellant's

Brief and Joint Appendix were electronically filed and served via CM/ECF on all

counsel of record.

/s/ Sydney M. Patterson
Sydney M. Patterson