## NO. 23-2232

# IN THE

# UNITED STATES COURT OF APPEALS

# FOR THE FOURTH CIRCUIT

DON GORDON, et al.

Plaintiffs - Appellees

v.

SERGEANT WILLIAM C. HEATH

Defendant - Appellant

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(GEORGE L. RUSSELL, JUDGE)

## RESPONSE BRIEF OF APPELLEES

Joseph E. Spicer, Esquire
Cohen Harris, LLC
40 York Road, 4th Floor
Towson, Maryland 21204
(443) 800-1300
Joseph@cohenharris.com
Counsel for Appellees

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __23-2232__       Caption: Don Gordon, et al. v. William Heath

Pursuant to FRAP 26.1 and Local Rule 26.1,

Don Gordon
(name of party/amicus)

who is _____ Appellee _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.   Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.   Does party/amicus have any parent corporations?   ☐ YES ☑ NO
     If yes, identify all parent corporations, including all generations of parent corporations:

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO
     If yes, identify all such owners:

12/01/2019 SCC                               - 1 -

4.     Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?     ☐YES ☑NO
If yes, identify entity and nature of interest:

5.     Is party a trade association? (amici curiae do not complete this question)     ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.     Does this case arise out of a bankruptcy proceeding?     ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.     Is this a criminal case in which there was an organizational victim?     ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Joseph E. Spicer             Date: 4/16/2024

Counsel for: Appellee Don Gordon

- 2 -

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __23-2232__          Caption: Don Gordon, et al. v. William Heath

Pursuant to FRAP 26.1 and Local Rule 26.1,

Terrell Jones
(name of party/amicus)


who is _____ Appellee _____ , makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO


2.    Does party/amicus have any parent corporations?                                              ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:


3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                                                                    ☐YES ☑NO
      If yes, identify all such owners:


12/01/2019 SCC                                            - 1 -

4.     Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?     ☐YES ☑NO
If yes, identify entity and nature of interest:

5.     Is party a trade association? (amici curiae do not complete this question)     ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.     Does this case arise out of a bankruptcy proceeding?     ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.     Is this a criminal case in which there was an organizational victim?     ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Joseph E. Spicer                    Date:     4/16/2024

Counsel for: Appellee Terrell Jones

- 2 -

Print to PDF for Filing

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ……………………………………………… ii

STATEMENT OF ISSUES ……………………………………………….. 1

STATEMENT OF CASE …………………………………………….. 1

SUMMARY OF ARGUMENT ……………………………………… 8

ARGUMENT ……………………………………………………… 9

    I.    Sergeant Heath is not entitled to qualified immunity on Gordon's and Jones' claims for Hostile Work Environment ………………………….. 9

        A. Gordon and Jones have established their hostile work environment claims against Sergeant Heath …………………………….. 11

            1. Gordon and Jones have established that there was a hostile work environment was based on race ……………………………  11

        B.  There was clearly established law establishing that Gordon's and Jones's rights were violated ………………………………………. 19

CONCLUSION ..……………………………………………………….. 22

i

**TABLE OF AUTHORITIES**

**Cases**                                                                        **Page**

*Anderson v. Creighton*, 483 U.S. 635 (1987) ……………………………….. 10, 21

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ……………………………….. 9, 10

*Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264 (4th Cir. 2015) …….. 12, 20,21

*Brockington v. Boykins, 637 F.3d 503 (4th Cir.2011)* ………………………….. 9

*Causey v. Balog*, 162 F.3d 795, 804 (4th Cir. 1998) …………………………… 12

*Clem v. Corbeau*, 284 F.3d 543 (4th Cir. 2002) ………………………………… 10, 21

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ……………………………………… 10, 21

*Harris v. Forklift Systems, Inc.,* 510 U.S. 17 (1993) ………………………….. 15

*Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) ………………………….. 10

*Holder v. City of Raleigh*, 867 F.2d 823 (4th Cir. 1989) ………………….….... 19

*Jones v. R.R. Donnelley & Sons Company*, 541 U.S. 369 (2004) …………… 20,21

*Loving v. Virginia,* 388 U.S. 1 (1967) ……………………………………… 19

*Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57 (1986) …………………… 20, 21

*Ocheltree v. Scollon Productions, Inc*., 335 F3d. 325 (4th Cir. 2003) …….…… 17

*Okoli v. City of Baltimore*, 648 F.3d 216 (4th Cir. 2011) …………………… 12

*Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75 (1998) ………….. 15

*Pearson v. Callahan,* 555 U.S. 223 (2009) ……………………………………… 9, 10

*Rogers v. Pendleton*, 249 F.3d 279 (4th Cir. 2001) ………………………….. 10, 21

*Saucier v. Katz*, 533 U.S. 194 (2001) …………………………………….. 9

ii

*Spriggs v Diamond Auto Glass,* 242 F.3d 179 (4th Cir. 2001) …………… 12, 20, 21

*Strothers v. City of Laurel, Maryland,* 895 F.3d 317 (4th Cir. 2018) ………. 12, 17

*Vance v. Ball State University,* 570 U.S. 421 (2013) ……………………… 17

**Statutes**

42 U.S.C. §1981 …………………………………… 1, 7, 8, 9, 11, 12, 18, 19, 20, 22

42 U.S.C. § 1983 ………………………………………………………………… 7

42 U.S.C. § 2000, et seq…………………………………………………….. 7

42 U.S.C. 2000e-2(a)(1) …………………………………………………… 20

## STATEMENT OF ISSUES

Whether the United States District Court erred when it denied Sergeant Heath's defense of qualified immunity against Plaintiffs'-Appellees' hostile work environment claims pursuant to 42 U.S.C. § 1981 as alleged in their Amended Complaint.

## STATEMENT OF CASE

### I.    Facts Alleged in Amended Complaint

Plaintiff-Appellee, Don Gordon (hereinafter, "Gordon") and Plaintiff-Appellee, Terrell Jones (hereinafter, "Jones") are African-Americans. JA9. Gordon is an experienced law enforcement officer who has over thirty (30) years of law enforcement experience. JA9. Gordon has been employed as a Baltimore City police officer and is currently employed by the Maryland Department of Public Safety and Correctional Services. JA9. In October 2019, Gordon was assigned by the Maryland Department of Public Safety and Correctional Services to the Task Force as a Task Force officer. JA9.

Jones is also an experienced law enforcement officer who was employed as a deputy by the Baltimore City Sheriff's Office for approximately fourteen (14) years. JA9. In April 2019, Jones was assigned by the Baltimore City Sheriff's Office to the Task Force as a Task Force officer. JA9.

1

The Maryland State Police could have chosen not to accept Gordon and Jones into the Task Force, but the Maryland State Police instead chose to accept them as Task Force members. JA9. The Maryland State Police, Sergeant Heath, and Corporal Oros also had the authority to remove Gordon and Jones from the Task Force. JA10. Sergeant Heath was Gordon's and Jones's supervisor with the Task Force. JA9. Sergeant Heath provided day-to-day supervision to Gordon and Jones. JA9. Gordon and Jones were also provided training by the Maryland State Police. JA10.

As members of the Task Force, both Gordon and Jones experienced disparate treatment due to their race. JA10-15. Within the first few months of their assignment with the Task Force, Gordon and Jones began to experience disparate treatment. JA10. At that time, Gordon and Jones noticed that white Task Force members received favorable treatment. JA11. As members of the Task Force, Gordon and Jones were excluded from informal meetings held by Sergeant Heath and Corporal Oros that white Task Force members were permitted to attend. JA11. Gordon and Jones were not invited or included in these informal meetings. JA11. They also were not included in group text messages regarding the Task Force's operations that included white Task Force members. JA11.

Sergeant Heath and Corporal Oros rarely communicated with Gordon and Jones. JA11. Gordon and Jones also were not included in routine group work text

2

message communications with Sergeant Heath and Corporal Oros. JA11. Sergeant

Heath and Corporal Oros established a separate group work text message threads

that did not include Gordon and Jones. JA11. This non-inclusive group work text

message thread did not include Gordon and Jones but included white Task Force

members. JA11. Often there were text messages that Sergeant Heath and Corporal

Oros sent to white Task Force members that included information about new and

ongoing drug investigations, job assignment opportunities, and opportunities for

overtime work which did not include Gordon and Jones. JA11. Gordon and Jones

were not informed of these job opportunities and were not afforded the chance to

take advantage of them because they were not included in the group text messages

and informal meetings that included white Task Force members. JA12.

Gordon and Jones often did not find out about these jobs opportunities until

they were no longer available. JA12. They found out about the job assignments,

job opportunities, and additional work when they heard other Task Force members

talking about them. JA12. Gordon and Jones were denied desirable job assignment

opportunities and overtime work that white Task Force members received. JA11.

They were denied the desired job opportunities and overtime opportunities that the

white Task Force members received. JA11.

Sergeant Heath and Corporal Oros knew that Gordon and Jones were excluded

from group text message threads. JA12. Gordon and Jones discovered that

Sergeant Heath participated in such text message threads which excluded them while the white members of the Task Force were included in the informal meetings and text message threads. JA12. The white Task Force officers also received job opportunities and more overtime opportunities than Gordon and Jones because they were present for the informal meetings and were included in the text message threads that excluded Gordon and Jones. JA12.

The Task Force was also negatively impacted by Defendant Oros' actions during Gordon's and Jones's assignments with the Task Force. JA12. Gordon and Jones were treated differently than the white Task Force members because of their race. JA12.

On or about June 2, 2020, Corporal Oros sent a racially offensive text message to Gordon, Jones, and other members of the Task Force. JA12. Corporal Oros' text message depicted a photograph a superimposed nude African-American male with exposed and enlarged genitals sitting on George Floyd's head and neck area on the street near the rear bumper of a Minneapolis police car. JA13. Corporal Oros' actions and Sergeant Heath's handling of the incident resulted in more racial division within the Task Force. JA13. Sergeant Heath failed to properly supervise and discipline Corporal Oros for his racist and offensive conduct. JA13. Sergeant Heath failed to report Corporal Oros' conduct through proper Maryland State Police supervisory channels. JA13.

4

Gordon and Jones found Sergeant Heath's behavior to be indicative of the kind of treatment they received during their time with the Task Force. JA13. Sergeant Heath failed to start an investigation into Corporal Oros' racist and offensive behavior. JA13.  Gordon and Jones were upset and offended by the actions of Corporal Oros and the inaction of Sergeant Heath. JA13. Sergeant Heath's conduct created an environment that resulted in Gordon's and Jones's disparate treatment based on their race and thereby also created a hostile work environment. JA13.

Sergeant Heath's behavior created a tense atmosphere in which Gordon and Jones did not want to come to work, that created mistrust along racial lines within the Task Force, and caused them to feel isolated from other Task Force members. JA13. Gordon and Jones did not believe they could trust the white Task Force members due to the tension and mistrust caused by Sergeant Heath's, Corporal Oros' and the Maryland State Police's behavior and conduct. JA13. They did not believe that the Maryland State Police, Sergeant Heath, and Corporal Oros, and other Task Force members would protect them while they were on the street conducting drug investigations, executing search and seizure warrants, and performing their daily duties due to the atmosphere caused by Sergeant Heath's, Corporal Oros' and the Maryland State Police's conduct. JA14.

Sergeant Heath's actions caused Gordon and Jones to lose opportunities at job assignments, overtime hours, and compensation afforded white members of the

Task Force. JA14. They held the same positions as the white Task Force officers. JA14. Gordon's and Jones's disparate treatment and losses were caused by Maryland State Police, specifically, their supervisors, Sergeant Heath and Corporal Oros who excluded them from meetings and text message threads which white Task Force members discussed and were assigned the most desirable job assignments and overtime opportunities. JA14.

The Maryland State Police, Sergeant Heath, and Corporal Oros permitted and condoned Gordon's and Jones's exclusion from the informal meetings and text message threads while the white members of the Task Force were included. JA14. The white members of the Task Force and white Task Force officers attended the informal meetings and financially benefitted from their attendance at those meetings. JA14. Furthermore, Corporal Oros' text message and Sergeant Heath's failure to take action against Corporal Oros' racist and offensive conduct created an even greater racial division within the Task Force. JA14.

Gordon and Jones were offended, felt uncomfortable, and felt intimidated by Sergeant Heath's and Corporal Oros' actions. JA15. The Maryland State Police's, Sergeant Heath's, and Corporal Oros' words and conduct hindered Gordon's and Jones' work performance and their ability to do their jobs. JA15. Gordon and Jones were adversely affected by Sergeant Heath's acts and omissions. JA15. Gordon and Jones would not have been subjected to the racist and offensive behavior and less

6

favorable treatment but for their race. JA15. But for their race, Gordon and Jones would not have been given less opportunities for more and better job assignments and less overtime opportunities than the white Task Force officers. JA15. There was no legitimate, non-discriminatory reason for Sergeant Heath's discriminatory conduct. JA15.

On July 8, 2022, Plaintiffs filed their Complaint against Sergeant Heath, Corporal Oros, and the Maryland State Police alleging the following claims: Count One---Racial Discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000, et seq.; Count Two--- Race Discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution and 42 U.S.C. §1983; and Count Three--- Hostile Work Environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, et seq..

On February 7th, 2023, Gordon and Jones filed their Amended Complaint alleging: (1) racial discrimination in violation of Title VII of the Civil Rights Act of 1964; (2) race discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution under 42 U.S.C. § 1983; (3) hostile work environment in violation of Title VII of the Civil Rights Act of 1964; (4) racial discrimination under 42 U.S.C. § 1981; and (5) hostile work environment under 42 U.S.C. § 1981.

On February 21, 2023, Sergeant Heath filed his Motion to Dismiss or in the Alternative Motion for Summary Judgment in which he asserted that Gordon's and Jones's claims were barred by qualified immunity.

On September 21, 2023, Judge George Russell of the United States District Court for the District of Maryland granted in part and denied in part Sergeant Heath's motion. Judge Russell denied Sergeant Heath's motion to dismiss Count V of Gordon's and Jones's Amended Complaint.

On October 19, 2023, Sergeant Heath filed his Notice of Appeal asserting that the district court wrongfully rejected his defense of qualified immunity.

## SUMMARY OF ARGUMENT

The United States District Court did not err when it denied Sergeant Heath's motion to dismiss Plaintiffs'-Appellees' 42 U.S.C. § 1981 hostile work environment claim on the basis of qualified immunity.

Gordon's and Jones's Amended Complaint alleged sufficient facts to show that Sergeant Heath committed racial discriminatory acts. Gordon and Jones made specific and detailed allegations of Sergeant Heath's discriminatory conduct in their Amended Complaint. Moreover, they have also detailed the adverse effects of Sergeant Heath's discriminatory conduct.

Sergeant Heath argues that Gordon's and Jones's hostile work environment claims exclusively relies upon Corporal Oros' offensive text message. However,

8

Gordon's and Jones's Amended Complaint provides detailed allegations of Sergeant Heath's racially discriminatory conduct and how he treated them differently than similarly situated white Task Force members. Gordon's and Jones's allegations established their claims for a hostile work environment under 42 U.S.C. §1981. Gordon's and Jones's Amended Complaint describes Sergeant Heath's conduct that violated their constitutional and statutory rights. Sergeant Heath's actions also violated clearly established law at the time. Accordingly, Sergeant Heath's defense of qualified immunity must be denied.

## ARGUMENT

I. **Sergeant Heath is not entitled to qualified immunity on Gordon's and Jones's claims of a Hostile Work Environment.**

The United States District Court did not err when it denied Sergeant Heath's defense of qualified immunity on Gordon's and Jones's claims of a hostile work environment.

Qualified immunity only protects government officials who commit constitutional violations who could reasonably believe that their actions were lawful in light of clearly established law. *Saucier v. Katz*, 533 U.S. 194, 206, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), *overruled in part, Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009); *see also Brockington v. Boykins,* 637 F.3d 503, 506 (4th Cir.2011). Qualified immunity does not protect government officials who knowingly violate the law. *Ashcroft v. al-Kidd*, 563 U.S. 731, 743, 131

9

S.Ct. 2074, 179 L.Ed.2d 1149 (2011).

Qualified immunity is only applicable when the actions taken by a government official were objectively reasonable "in light of the legal rules that were 'clearly established' at the time." *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034 (1987); see also *Harlow v. Fitzgerald*, 457 U.S. 800, 818-819, 127 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity only protects government officials "where the law is unsettled or murky." *Rogers v. Pendleton*, 249 F.3d 279, 286 (4th Cir. 2001). "[A] constitutional right is clearly established for qualified immunity purposes not only when it has been 'specifically adjudicated' ... [but] when the defendants' conduct is so patently violative of the constitutional right that reasonable officials would know without guidance from the courts that the action was unconstitutional, closely analogous pre-existing case law is not required ..." *Clem v. Corbeau*, 284 F.3d 543, 553 (4th Cir. 2002).

When deciding whether a government official is entitled to qualified immunity, a court must decide: (1) "whether a constitutional violation occurred"; and (2) "whether the right violated was clearly established". *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011).; see *Pearson v. Callahan*, 555 U.S. at 236; 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

In the instant matter, Sergeant Heath claims he is entitled to qualified immunity in his individual capacity against Gordon's and Jones's hostile work

10

environment claims pursuant to 42 U.S.C. § 1981. However, Sergeant Heath is not entitled to qualified immunity because he violated Gordon's and Jones's statutory and constitutional rights which were clearly established at the time.

Considering the facts alleged in Gordon's and Jones's Amended Complaint, in the light most favorable to them, both Gordon and Jones had a right to be free from racial discrimination and a hostile work environment. They had clearly established rights at the time that were violated by Sergeant Heath. These rights should have been known to a reasonable government official. It would be objectively unreasonable for Sergeant Heath under the circumstances to believe he could treat Gordon and Jones differently than the white Task Force members because of their race. In treating Gordon and Jones differently than the white Task Force members, Sergeant Heath created a hostile work environment based upon race.

Sergeant Heath knowingly violated Gordon's and Jones's constitutional and/or statutory rights to be free from racial discrimination and in doing so created a hostile work environment. Accordingly, Sergeant Heath is not entitled to qualified immunity.

**A. Gordon and Jones have established their claims of a hostile work environment claims against Sergeant Heath.**

1. **Gordon and Jones have established that there was a hostile work environment based on race.**

11

Courts have established that a hostile work environment is one that is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [employment] and create an abusive work environment." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015).

To succeed in proving there is a viable hostile work environment claim based on race, a plaintiff must allege that: (1) he was subjected to unwelcome conduct; (2) which was based on his race; (3) the conduct was sufficiently pervasive or severe to alter the conditions of employment and to create an abusive atmosphere; and (4) is imputable to the employer. *Strothers v. City of Laurel, Maryland,* 895 F.3d 317, 328 (4th Cir. 2018); see also *Boyer-Liberto*, 786 F3d. at 277; *Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011). The same elements apply to hostile work environment claims under 42 U.S.C. § 1981. See *Spriggs v Diamond Auto Glass,* 242 F.3d 179, 184 (4th Cir. 2001); see also *Causey v. Balog*, 162 F.3d 795, 804 (4th Cir. 1998).

The four corners of Gordon's and Jones's Amended Complaint met the elements required to establish their claims of a hostile work environment. First, Gordon's and Jones's Amended Complaint alleges that Sergeant Heath's conduct toward them was unwelcome. They clearly did not welcome Sergeant Heath's unlawful conduct. Gordon and Jones did not want to be excluded by Sergeant

Heath from Task Force meetings and text message threads. Gordon's and Jones's Amended Complaint has clearly shown that Sergeant Heath excluded them from meetings with him while those meetings were attended by white Task Force members. JA11. Gordon's and Jones's exclusion from Task Force meetings and text message threads adversely effected their job performance and caused them to lose job opportunities and overtime opportunities. Moreover, Sergeant Heath's conduct also created mistrust and racial division between the members of the Task Force because of the disparate treatment received by Gordon and Jones. Accordingly, Gordon and Jones clearly did not welcome Sergeant Heath's racially discriminatory conduct.

The second element to be considered is whether Gordon and Jones sufficiently alleged that their hostile work environment claims are based upon race.

Gordon and Jones are African-Americans who were excluded from Task Force meetings by Sergeant Heath while the white Task Force members were included in those meetings. JA9, 11. Sergeant Heath's exclusion of Gordon and Jones from Task Force meetings and text message threads were because of their race while the similarly situated white Task Force members were not excluded. JA11, 12. The only difference between Gordon, Jones, and the similarly situated white Task Force members are their race. JA11. The sole reason for Gordon's and Jones's exclusion from the Task Force meetings and text message threads is their

13

race. JA15. Sergeant Heath knew about Gordon's and Jones's exclusion from Task Force meetings and text message threads because he participated in excluding them. JA11-12.

Gordon's and Jones's Amended Complaint has shown that they received adverse treatment from Sergeant Heath during their employment with the Task Force. JA13-15. They were excluded from meetings by Sergeant Heath that included similarly situated white Task Force members. JA11. The white members of the Task Force were similarly situated with Gordon and Jones because they were part of the same task force, had the same supervisors, were subject to the same criteria to attend the Task Force meetings and were subject to the same criteria to be participants in the text message thread. However, despite the similarities and commonalities between Gordon, Jones, and the white Task Force members, Gordon and Jones were treated differently by Sergeant Heath. The only difference between Gordon, Jones, and the white Task Force members is their race. JA11.

The discrimination exhibited by Sergeant Heath caused racial division and racial tension within the Task Force prior to Corporal Oros sending the racially offensive text message. Accordingly, Gordon and Jones have shown that the reason for their hostile work environment claims and their adverse treatment within the Task Force is based upon race.

The third element a plaintiff must prove to establish a claim for a hostile work environment requires a plaintiff to show that "the environment would reasonably be perceived, and is perceived, as hostile or abusive"; the plaintiff may, but is not required to, establish that the environment is "psychologically injurious." *See Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 22, 114 S.Ct. 367, 370-371 (1993).

Courts have opined that whether an environment is objectively hostile or abusive is to be "judged from the perspective of a reasonable person in the plaintiff's position." *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 81, 118 S.Ct. 998 (1998). This determination is to be made "by looking at all the circumstances," which "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris,* 510 U.S. at 23, 114 S.Ct. 367.  The courts have not established a precise test for this factor. *Id.* at 22, 114 S.Ct. 367.  The test "is not, and by its nature cannot be, a mathematically precise test." *Id.*

Sergeant Heath's discriminatory conduct created an environment that was both physically threatening and interfered with Gordon's and Jones's work performance. JA13. Sergeant Heath's conduct changed the condition of Gordon's and Jones's employment and created an abusive atmosphere within the Maryland

State Police and the Task Force. JA13-15. Sergeant Heath's conduct resulted in Gordon's and Jones's disparate treatment based upon their race. JA13-15. Sergeant Heath's conduct also created a tense work environment where Gordon and Jones did not want to come to work, created mistrust along racial lines within the Task Force, and caused Gordon and Jones to feel isolated from other Task Force members. JA13. Gordon and Jones did not believe that they could trust the white Task Force members due to the tension and mistrust caused by Sergeant Heath's conduct. JA13. Gordon and Jones did not believe Sergeant Heath, Corporal Oros, and other Task Force members would protect them and back them up while they were on the street conducting drug investigations, while they were executing search and seizure warrants, and performing their other law enforcement duties due to the hostile work environment caused by Sergeant Heath's conduct. JA14. The tense and divisive environment caused by Sergeant Heath's conduct negatively affected Gordon's and Jones's job performance and hindered their ability to do their jobs. JA15.

Sergeant Heath's actions also caused Gordon and Jones to lose opportunities at job assignments, overtime hours, and compensation afforded white Task Force members.  JA14. Sergeant Heath caused Gordon's and Jones's disparate treatment and losses when he excluded them from meetings and text message threads in which the white Task Force members discussed and were assigned the most

16

desirable job assignments and overtime opportunities. JA14. Sergeant Heath's discriminatory conduct caused Gordon and Jones to feel upset, intimidated, offended, and isolated during their period of employment with the Task Force. JA 13, 15. As such, Sergeant Heath's conduct severely altered the condition of Gordon's and Jones's employment with the Task Force and unreasonably interfered with their job performance.

The fourth and final element a plaintiff must prove is whether a defendant's conduct is imputable to the employer. If Sergeant Heath is found to be a co-worker, then a plaintiff must prove that his or her employer was "negligent in controlling working conditions" or the employer "knew or should have known about the harassment and failed to take effective action to stop it." *Strothers v. City of Laurel, Maryland*, 895 F.3d 317, 332-333; *See Vance v. Ball State University*, 570 U.S. 421, 424, 133 S.Ct. 2434, 186 L.Ed.26 565 (2013); *Ocheltree v. Scollon Productions, Inc*., 335 F3d. 325, 333-334 (4th Cir. 2003). However, if Sergeant Heath is found to be a supervisor, then the employer may be either strictly or vicariously liable for the supervisor's actions. *Strothers v. City of Laurel, Maryland*, 895 F.3d at 333; see also *Vance,* 570 U.S. at 431, 133 S.Ct. 2434.

In this case, both Gordon and Jones have shown that Sergeant Heath was their supervisor. Sergeant Heath was their supervisor because he provided day-to-day supervision over them in the Task Force. JA9. Moreover, Sergeant Heath had

17

the ability to take adverse employment action them such as removing them from the Task Force. Gordon and Jones also observed Sergeant Heath provide them with different job responsibilities and job opportunities than white Task Force members which resulted in them receiving different financial benefits than the white Task Force members.

Gordon's and Jones's Amended Complaint has alleged sufficient facts in which a reasonable person could find that a hostile work environment existed during their employment with the Task Force and that the hostile work environment was caused by Sergeant Heath. Gordon and Jones have established the elements required to sustain their claims for hostile work environment based upon race under 42 U.S.C. § 1981.

In the instant matter, Sergeant Heath claims that Gordon's and Jones's Amended Complaint is making conclusory allegations in support of their claims. However, Sergeant Heath's assertion is inconsistent with the four corners of Gordon's and Jones's Amended Complaint. In fact, Sergeant Heath is the only party making conclusory statements without any factual support. When viewing the facts in the light most favorable to Gordon and Jones, the four corners of their Amended Complaint has established that Sergeant Heath violated their rights under 42 U.S.C. §1981 by creating a hostile work environment based upon race.

18

**B. There is a clearly established law showing Sergeant Heath violated Gordon's and Jones's rights.**

Sergeant Heath asserts, in his individual capacity, that he is entitled to qualified immunity against Gordon's and Jones's claims of a hostile work environment under 42 U.S.C. § 1981. However, Sergeant Heath failed to address the four corners of Gordon's and Jones's Amended Complaint to entitle him to qualified immunity.

In this matter, Gordon's and Jones's Amended Complaint alleged sufficient facts establishing that Sergeant Heath created a hostile work environment and violated their rights under 42 U.S.C. § 1981. Gordon's and Jones's Amended Complaint sufficiently stated claims for a hostile work environment under 42 U.S.C. § 1981.

At the time of the events at issue, the law was clearly established that a government employees may file claims for racial discrimination in employment under 42 U.S.C. § 1981. *Holder v. City of Raleigh*, 867 F.2d 823, 828 (4th Cir. 1989). Moreover, it was also clearly established law that individuals have the right to be free from discrimination on the basis of race by state actors. *See Loving v. Virginia,* 388 U.S. 1, 10, 87 S.Ct. 1817, 1823 (1967). *In Loving*, the Unted States Supreme Court wrote "[t]he clear and central purpose of the Fourteenth Amendment was to eliminate all official state sources of invidious racial discrimination in the States". *Id.*

19

Courts have also addressed the issue of unlawful employment practices by employers. In *Boyer-Liberto v. Fountainebleau Corporation,* 786 F.3d 264, 276-277 (4th Cir. 2015), the Court noted that it is unlawful to discriminate against an individual with respect one's employment based upon race. The *Boyer-Liberto* Court wrote "Title VII renders it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Id.*; see also 42 U.S.C. 2000e-2(a)(1).

The *Boyer-Liberto* Court also recognized that an employer violates Title VII when it requires "an African-American employee work in a racially hostile work environment". *Boyer-Liberto*, 786 F.3d at 277; see also *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65-67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Courts have also recognized that hostile work environment claims based upon race may be brought under 42 U.S.C. § 1981. *Spriggs v. Diamond Glass*, 242 F.3d 179, 184 (4th Cir. 1984); see also *Jones v. R.R. Donnelley & Sons Company*, 541 U.S. 369, 373, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004).

Sergeant Heath argues that, in his individual capacity, he is entitled to qualified immunity from §1981 liability. However, qualified immunity is only applicable when the actions taken were objectively reasonable "in light of the legal

20

rules that were 'clearly established' at the time." *Anderson v. Creighton*, 483 U.S. at 639, 107 S.Ct. at 3038; see also *Harlow v. Fitzgerald*, 457 U.S. at 818-819. Qualified immunity only protects government officials "where the law is unsettled or murky." *Rogers v. Pendleton*, 249 F.3d at 286. "[A] constitutional right is clearly established for qualified immunity purposes not only when it has been 'specifically adjudicated' ... [but] when the defendants' conduct is so patently violative of the constitutional right that reasonable officials would know without guidance from the courts that the action was unconstitutional, closely analogous pre-existing case law is not required ..." *Clem v. Corbeau*, 284 F.3d at 553.

In this cause of action, Sergeant Heath should have known that treating Gordon and Jones differently and unequally based upon race and creating a hostile work environment constituted a statutory and/or a constitutional violation.

At the time of Sergeant Heath's conduct, it was clearly established law under Title VII, 42 U.S.C. § 1981, and case law in *Boyer-Liberto*, 786 F.3d at 277, *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65-67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), *Spriggs v. Diamond Glass*, 242 F.3d 179, 184 (4th Cir. 1984), and *Jones v. R.R. Donnelley & Sons Company*, 541 U.S. 369, 373, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004) that it is unlawful to create a hostile work environment based upon race. Moreover, it was also clearly unlawful to require Gordon and Jones, as African-Americans, to work in a hostile work environment. Accordingly,

21

it would be objectively unreasonable for Sergeant Heath to believe he could treat Gordon and Jones differently than white Task Force members based upon their race.

In the instant matter, Gordon and Jones have sufficiently alleged in their Amended Complaint that Sergeant Heath violated clearly established constitutional and/or statutory law. As such, Sergeant Heath is not entitled to qualified immunity on Plaintiffs'-Appellees' claims of a hostile work environment based upon race under 42 U.S.C. § 1981. Considering the facts alleged in Gordon's and Jones's Amended Complaint, it is clearly established law that Gordon and Jones have a right to be free from racial discrimination and must not be required to work in a hostile work environment under 42 U.S.C. §1981. The law is so clearly established law that a reasonable person should have known about these rights at the time of the alleged occurrences. Accordingly, Sergeant Heath's claim for qualified immunity must be denied.

## CONCLUSION

For all the foregoing reasons, in the light most favorable to the Plaintiffs-Appellees, Sergeant Heath is not entitled to qualified immunity. Accordingly, Plaintiffs-Appellees request that this Court affirm the United States District Court's denial of Sergeant Heath's defense of qualified immunity and deny his

22

request to dismiss Gordon's and Jones's claims of hostile work environment under

42 U.S.C. § 1981.

Respectfully submitted,

*/s/ Joseph E. Spicer, Esquire*

 Joseph E. Spicer (Bar No. 27839)
Cohen Harris, LLC
40 York Road, 4th Floor
Towson, Maryland 21204
Telephone No.: (443) 800-1300
Fax No.: (443) 773-0675
Email: Joseph@cohenharris.com
Counsel for Plaintiffs-Appellees

23

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

No. ___23-2232___    **Caption:** Don Gordon, et al. v. Sergeant William C. Heath

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

> **Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

> **Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

> **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✓] this brief or other document contains ___5,466___ [*state number of*] words

[ ] this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✓] this brief or other document has been prepared in a proportionally spaced typeface using
Microsoft Word _____ [*identify word processing program*] in
Times New Roman 14 pt. Font _____ [*identify font size and type style*]; **or**

[ ] this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) Joseph E. Spicer

Party Name Don Gordon and Terrell Jones

Dated: April 16, 2024

04/12/2020  SCC

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of April 2024, a copy of

Appellees' Brief and Joint Appendix were electronically filed and served via

CM/ECF on all counsel of record.


*/s/ Joseph E. Spicer, Esquire*
Joseph E. Spicer (Bar No. 27839)